**Ramon Collazo TORRES, Plaintiff,**

**v.**

**Elliot M. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 792-72.**

United States District Court,
D. Puerto Rico.

Jan. 30, 1974.

(hereinafter referred to as "the Secretary"), which denied plaintiff's application for a period of disability and disability insurance benefits.

## Prior Proceedings

On December 4, 1970 plaintiff filed an application for disability insurance benefits. This application was denied on April 6, 1971 (Tr. 42–43). A request for reconsideration was then filed on April 19, 1971 and on June 23, 1971 a notice of the determination was issued holding that the previous decision was proper under the law. Then plaintiff asked for a hearing on July 28, 1971 and a notice for a hearing was sent on January 14, 1972. The same was held on February 3, 1972. The case was considered *de novo* by the hearing examiner who on March 28, 1972 decided that plaintiff was not under a disability starting on or before December 31, 1970, when he had the necessary disability insured status. The hearing examiner's decision became the final decision of the Secretary when it was approved by the Appeals Council on June 27, 1972. From this decision the claimant appealed to this Court.

Plaintiff was born on April 10, 1925. He has a fourth grade education, writes and reads Spanish but not English. He has worked as an agricultural laborer and also as a construction worker.

On March 10, 1970 while working as a construction laborer he injured his back when lifting a rafter. Initially X-rays were made which revealed no bone destruction on the lumbar spine. Treatment consisted of heat and Darvon. He was then referred to the State Insurance Fund Central Dispensary for physiotherapy and then to a physiatrist because of the alleged pain in the lumbar region. Later, Dr. Roberto A. Negrón, a Board specialist in neurosurgery, found discal herniation L5–S1 left side related, verified with a myelogram. Plaintiff was scheduled for surgery on December 15, 1970 but he refused because his wife was very sick at that time.

Horacio R. Subira, Jr., San Juan, P. R., for plaintiff.

Asst. U. S. Atty. Ignacio Rivera-Cordero, San Juan, P. R., for defendant.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended (hereinafter referred to as "the Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health, Education and Welfare

Upon application for disability insurance benefits under the Act, the Social Security Administration referred him to Dr. Sebastián A. Colón Alemañy, a specialist in neurology who, on January 29, 1971, examined him. The specialist observed that plaintiff limped on his left leg and a visual examination of plaintiff's lumbar area revealed normal curvature, no muscle spasms or painful spot and no tilted pelvis. Dr. Colón made other tests to look for muscle spasms and root compression. During the Valsalva's test (coughing) plaintiff communicated to the doctor his impression that there was no change in the intense pain he was suffering. Because of the same discomfort he also had to limit the back movements and could only make a 20-degree flexion. Although there is no mention of any specific test for reflexes (as for example the Achilles test), sensory, strength, the doctor concluded that there were no external signs of root compression. No myelogram was done to look for internal signs of the alleged deficiency, no evaluation of plaintiff's back range in motion and lower extremities or range motion was made, and no squatting was done. The doctor, however, further concluded that there were no signs of lumbar HNP at that time and that plaintiff had no trouble in sitting, standing, walking, bending, squatting, lifting, pinching or grasping.

Meanwhile, an award was given, on March 30, 1971, of 20% of permanent partial disability to the claimant, by the State Insurance Fund, based on the injury of the lumbar disc.

On April 23, 1971 a re-evaluation of the claimant was performed by Dr. Roberto A. Negrón, Professor of Neurology of the School of Medicine of the University of Puerto Rico, who, together with the medical members of the Back Committee of the Industrial Hospital, recommended surgery. Plaintiff preferred to wait and on June 23, 1971 he accepted to submit to surgery for his herniated lumbar disc. He was also referred to the State Insurance Fund to be examined by the neurosurgeon. Later, on November 9, 1971, Dr. Roberto A. Negrón certified by the American Board of Neurological Surgery, gave a diagnosis of HNP (herniated nucleus pulpous) L5–S1 and recommended admission for hospitalization for surgery on December 6, 1971. Orders for myelogram plates were given. However, when claimant went to the hospital, there was a strike going on and he had to return home until further notice.

■ In order to establish entitlement for a period of disability and disability insurance benefits, plaintiff has the burden of establishing that he is unable to engage in substantial gainful activity by reason of a physical or mental impairment, the existence of which is demonstrated by objective data obtained by medically acceptable clinical and laboratory techniques at a time when he met the insured status requirements of the Act. Act § 223(d), 42 U.S.C. § 423(d); Reyes Robles v. Finch, 409 F.2d 84 (1 Cir., 1969); Henley v. Celebrezze, 394 F.2d 507 (3 Cir., 1968); Franklin v. Secretary, 393 F.2d 640 (2 Cir. 1968).

The described treatment of the claimant is the conservative treatment given in cases of lumbatic and sciatic disorders.[1] As a last resort recurrence to myelogram and surgery is indicated.

■ It is true that the claimant of disability insurance benefits has the burden of proving that disability, as defined by the statute, exists, but this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, C.A.4, 1964, 331 F.2d 541; Boggs v. Cohen, D.C.Va., 1969, 298 F.Supp. 175; Mullins v. Cohen, D.C.Va. 1967, 269 F.Supp. 100.

Dr. Colón Alemañy, through an examination that starts when the patient comes into the office, observed that the lumbar area revealed normal curvature, no muscle spasm or painful spot and no

---

1. B. E. Finneson and Others, M.D., F.A.C.S., Diagnosis and Management of Pain Syndromes (Spanish translation, 2d Ed., Salvat Editors, Barcelona, 1970, pp. 246–250.

tilted pelvis. Then he made some tests to look for indications of nerve root pressure, disc or other neurological disease. Although he knew of the HNP L5–S1 diagnosis, there is no indication that he made the Achillean test. A diminution or absence of this reflex is characteristic of herniated disc L5–S1. Neither indication is recorded if a test was made on the muscles of the great toe to ascertain if there is any weakness on them. This is also a characteristic symptom of a herniated disc. There are other missing tests regularly done for lumbar and sciatic disorders diagnosis, like the Patrick test, the Ober and the Kraus-Weber. The normal lecture of the Lasegne test (leg raising) is 90 degrees, unless patient cannot stand the pain before reaching such point.[2] Other specialists, like the Clinical Associate Professor of the New York University School of Law, Hans Kraus,[3] do not agree with the interpretation that passive leg raise test is a true sign of nerve root and sciatic irritation.

■ This Court further finds that the Secretary should have seen to it that the test mentioned above was performed, otherwise the results of the physical examination can hardly be considered valid.

■ In this case subjective evidence of pain experienced by the claimant was a factor which could not be ignored in evaluating his ability to engage in gainful work. Wells v. Cohen, D.C. Va., 1969, 296 F.Supp. 276. Pain can be disabling affliction and should not have been ignored. Darter v. Cohen, D.C.Va., 1969, 299 F.Supp. 473.

This case is therefore remanded to the Secretary of Health, Education and Welfare for further findings not inconsistent with this opinion.

It is so ordered.

2. B. E. Finneson and Others, M.D., F.A.C.S., Diagnosis and Management of Pain Syndromes (Spanish translation, 2d Ed., Salvat Editors, Barcelona, 1970, p. 227.

3. Hans Kraus, Clinical Treatment of Back and Neck Pain, McGraw-Hill Book Co., 1970, p. 33.